UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

_____

STEVEN KAYWOOD,

    *Plaintiff,*

    v.                            Case No: 2:23-cv-1644

CITY OF MILWAUKEE, ET AL.,

    *Defendants.*

_____

**PLAINTIFF'S PROPOSED FINDINGS OF FACT**

_____

Plaintiff Steven Kaywood, by his attorneys Strang Bradley, LLC, submits the following proposed findings of fact in support of his motion for partial summary judgment.

### I. Background

1. Steven Kaywood is an adult resident of Milwaukee, Wisconsin. Dkt. 7, ¶8.

2. On December 27, 2016, Kaywood opened a convenience store called "B.B. Sweets & Things, L.L.C." at 2452 W. Capitol Drive in the City of Milwaukee. Ex. U to Grau Decl. at 11:18–24; Ex. V to Grau Decl. at ¶5.

3. Kaywood's girlfriend, Brianna Battiste (affectionately called "B.B.") was a co-owner of the store with Kaywood and the registered agent of the LLC. Ex. V to Grau Decl. at ¶¶8–9; Ex. U to Grau Decl. at 11:19–20.

4. Battiste played a limited role in working and managing the store. Ex. V to Grau Decl. at ¶¶12–13.

5. In part, Battiste was listed as a co-owner of the store because Kaywood wanted his girlfriend to be involved with it. But Kaywood also involved Battiste in the store's operation because he was a felon. Having a non-felon (as Battiste is) as a co-owner was also helpful in securing a lease and various licenses the store required. Ex. U to Grau Decl. at 36:23–37:8; Ex. V to Grau Decl. at ¶¶10–11.

6. Kaywood purchased everything in the store with his personal funds. Ex. U to Grau Decl. at 37:7–8; Ex. V to Grau Decl. at ¶6.

7. This included security cameras inside and outside the store and a hard drive that captured the images from these cameras. Ex. U to Grau Decl. at 37:9–16; Ex. V to Grau Decl. at ¶6.

8. Sometime in 2020, Kaywood and Battiste ended their relationship. Ex. U to Grau Decl. at 11:18–21; Ex. V to Grau Decl. at ¶21.

9. As a result of their breakup, Kaywood and Battiste ended B.B. Sweets, LLC. Ex. U to Grau Decl. at 11:18–21; Ex. V to Grau Decl. at ¶21.

10. The store was renamed Boney's Foods, LLC ("Boney's Foods") on July 17, 2020. Ex. U to Grau Decl., 12:1–9, Ex. V to Grau Decl. at ¶27.

11. Kaywood renamed the store Boney's Foods after Kaywood's nickname, "Boney." Ex. U to Grau Decl. at 11:10–13; Ex. V to Grau Decl. at ¶29.

12. Kaywood's niece Sharral Payne became a co-owner. Ex. U to Grau Decl. at 13:1-3.

2

13. The organizational structure of Boney's Foods was similar to that of B.B. Sweets, LLC. Payne, who is not a felon, became the store's registered agent. Ex. V to Grau Decl. at ¶¶26–27, Ex. U to Grau Decl. at 12:23–13:3.

14. In part, Kaywood asked Payne to be a co-owner because he wanted to continue to run a family business. Moreover, as Battiste had done previously, Payne, who was not a felon, allowed Kaywood to secure the lease at 2452 W. Capitol Drive. Ex. V to Grau Decl. at ¶27.

15. Because she was not a felon, Payne was also able to secure various licenses for the store. Ex. V to Grau Decl. at ¶27.

16. However, as he did with Battiste, Kaywood was the primary owner and handled the day-to-day operations. Ex. V to Grau Decl. at ¶32.

17. When Boney's Foods was profitable, Kaywood would receive a portion of the profits. Ex. V to Grau Decl. at ¶33.

18. Payne did not have a key to the store. Rather, Kaywood had control over all three keys to the store. Ex. J to Grau Decl. at 00:02:16–00:02:20; Ex. U to Grau Decl.at 13:24–14:7; Ex. V to Grau Decl. at ¶35.

19. Kaywood chose who to give the other two keys to the store to. He decided to give one set of keys to a cousin he trusted, Anthony Blue. He gave the remaining key to a friend he trusted, Toni Macklin. Ex. U to Grau Decl. at 13:24–14:7; Ex. V to Grau Decl. at ¶35

3

20. Kaywood would work at Boney's Foods 12 hours a day. During that time, he ran the day-to-day operation of Boney's Foods. Ex. U to Grau Decl. at 18:22–23; Ex. W to Grau Decl. at ¶7; Ex. V to Grau Decl. at ¶31.

21. Most of the time, he was the only person working the store. Ex. U to Grau Decl. at 18:19–23.

22. When the store ran low on food or other supplies, Kaywood ordered and paid for new items. Ex. W to Grau Decl. at ¶8; Ex. V to Grau Decl. at ¶31.

23. One of Kaywood's employees was Shiesha "Brittaney" Robinson, who was working the evening Kaywood was shot. Ex. U to Grau Decl. at 17:17–20; Ex. W to Grau Decl. at ¶4.

24. Robinson understood Kaywood to be her boss and the owner of Boney's Foods. Ex. W to Grau Decl. at ¶¶5–6.

25. Kaywood would set the employee schedules for Boney's Foods. Ex. 26, ¶7; Ex. V to Grau Decl. at ¶31.

26. Boney's Foods had a single door leading to the outside. Ex. U to Grau Decl. at 15:6–9; Ex. W to Grau Decl. at ¶9.

27. After Robinson and Kaywood closed the store, Kaywood would lock the store's sole door leading to the outside. Once that door was locked, no one from the public was allowed inside the store. Ex. V to Grau Decl. at ¶18; Ex. W to Grau Decl. at ¶11.

4

28.    Kaywood would frequently leave his personal belongings inside of Boney's Foods overnight while the store was locked. Ex. V to Grau Decl. at ¶39; Ex. W to Grau Decl. at ¶12.

## II.  December 8, 2020, Shooting at Boney's Foods

29.    On the evening of December 8, 2020, both Kaywood and Robinson were working at Boney's Foods. Ex. W to Grau Decl. at ¶¶13–14; Ex. V to Grau Decl. at ¶40.

30.    Kaywood stepped outside of Boney's Foods to speak with someone who was showing off his new car. Ex. W to Grau Decl. at ¶14.

31.    While Kaywood was outside, a series of gunshots were fired in Kaywood's direction. *Id.*, 15. Ex. U to Grau Decl. at 21:24–22:11.

32.    The other patrons sprint towards safety in an alleyway on the side of the store. They were not hit. But Kaywood was confused and unsure of where the gunfire was coming from, and he inadvertently ran towards the attempted assassins.   One of the bullets struck Kaywood in the lower back. Ex. U to Grau Decl. at 22:7–8; 22:7–8; 23:7–10, 23:11–16; Ex. V to Grau Decl. at ¶41.

33.    Kaywood fell to the ground.  He continued to hear bullets passing over his head.  He thought he was going to die. After the gunfire had passed, Kaywood retreated into the Boney's Foods bathroom to examine his injury.  Ex. U to Grau Decl. at 23:13–16, 23:17–19, 24:18–20, 26:6–13; Ex. V to Grau Decl. at ¶43.

34.    As he did this, Kaywood bled onto the floor. Ex. V to Grau Decl. at ¶43.

35. Kaywood left some of his personal belongings including his coat, wallet, and keys in the store. Ex. V to Grau Decl. at ¶44.

36. He told Robinson to call the police. A family member then rushed Kaywood to the hospital. Ex. U to Grau Decl., 25:16–23, Ex. V to Grau Decl. at ¶45, Ex. W to Grau Decl. at ¶17.

37. While Kaywood was transported to the hospital, Robinson stayed behind to close Boney's Foods. Ex. W to Grau Decl. at ¶18.

38. Robinson locked the Boney's Foods front door so that no one from the outside public could enter the store. Once the door was locked, no one remained inside the store, and it was no longer open to the public. Ex. W to Grau Decl. at ¶¶19–20.

39. Robinson did not give anyone, including officers from the Milwaukee Police Department, permission to enter the store after she locked the front door that night. Ex. W to Grau Decl. at ¶20.

### III. Milwaukee Police Department Responds to the Scene

40. Nicholas Sandoval, Tyler Seelow, and Mark Dillman were officers with the Milwaukee Police Department on December 8, 2020. Ex. Q to Grau Decl. at 6:13–234; Ex. S to Grau Decl. at 6:25–7:9; Ex. T to Grau Decl. at 7:14–20.

41. In December of 2020, Officer Sandoval was an officer in training. Ex. T to Grau Decl. at 9:2–5; Ex. S to Grau Decl. at 8:7–25.

42. Sandoval's field training supervisor at the time was Officer Seelow. This meant Officer Seelow was responsible for overseeing Officer Sandoval's actions

6

when they were called to a scene. Ex. S to Grau Decl. at 9:1-6; Ex. T to Grau Decl. at 9:6–12.

43.   Officers Dillman, Seelow, and Sandoval were dispatched to Boney's Foods at 7:34 p.m. following a ShotSpotter alert on West Capitol Drive in Milwaukee. Ex. E to Grau Decl.; Ex. B to Grau Decl.

44.   Officer Dillman arrived at Boney's Foods at about 7:43 p.m. Ex. Q to Grau Decl. at 38:19–24.  Officers Seelow and Sandoval arrived outside of Boney's Foods store at about 7:37 p.m. Ex. S to Grau Decl. at 15:2-6; Ex. T to Grau Decl. at 21:25–22:2.

45.   Officers Dillman, Seelow, and Sandoval saw bullet casings and drops of blood leading into Boney's Foods. Ex. T to Grau Decl. at 10:19–22; Ex. F to Grau Decl. 00:00:00–00:05:51; Ex. G to Grau Decl. 00:00:30–00:00:48.

46.   This led Officer Seelow to believe that there might be someone injured inside the store. Ex. T to Grau Decl., 11:12–15.

47.   The door to Boney's Foods remained locked during this time. Ex. F to Grau Decl. 00:04:02–00:04:16.

48.   Officer Seelow kicked in the locked front door to Boney's Foods. Ex. T to Grau Decl. at 11:8–11; Ex. G to Grau Decl. 00:01:03–00:01:05; Ex. H to Grau Decl. 00:00:00–00:00:10.

49.   At the time Officer Seelow kicked in the locked door to Boney's Foods, he and Officer Dillman knew that the Milwaukee Police Department did not have a

warrant to enter the store. Ex. Q to Grau Decl. at 14:23–15:6; Ex. T to Grau Decl. at 12:2–7.

50. Officers Seelow and Dillman then conducted a sweep of the building. Their search of the store revealed that there was no one inside the building. Ex. T to Grau Decl. at 14:5–17:3; Ex. G to Grau Decl. 00:01:05–00:01:46; Ex. H to Grau Decl. 00:00:10–00:00:52.

51. Once they completed their sweep of the building, Officers Seelow and Dillman knew that no one was in Boney's Foods, much less in need of medical aid. Ex. Q to Grau Decl. at 20:23–21:1, Ex. T to Grau Decl. at 17:4–8.

52. During this initial sweep, Officers Seelow and Dillman observed a black jacket—later identified as Kaywood's—on the ground. The Officers saw blood on the jacket. Ex. Q to Grau Decl. at 21:12–20, Ex. T to Grau Decl. at 17:14–18:14; Ex. G to Grau Decl. 00:01:10–00:01:15; Ex. H to Grau Decl. 00:00:15–00:00:17.

53. However, Officers Seelow and Dillman did not examine or seize the coat before exiting the building. Ex. Q to Grau Decl. at 21:24–22:6; Ex. T to Grau Decl. at 17:23–25; Ex. G to Grau Decl. 00:01:03–00:01:05; Ex. H to Grau Decl. 00:00:39–00:00:44.

54. Officers Seelow and Dillman exited the store at about 7:47 p.m. Ex. T to Grau Decl., 22:9–12; Ex. G to Grau Decl. 00:01:43–00:01:48; Ex. H to Grau Decl. 00:00:45–00:00:52.

55. After Officer Seelow left the building, he announced, "It's clear in here," to let the other officers know that no one was inside of the store. Ex. T to Grau Decl. at 19:15–21; Ex. H to Grau Decl. 00:00:45.

56. Officer Seelow then said, "That's it. Ok, we need to lock it up." Ex. H to Grau Decl. 00:00:52–00:00:056.

57. At the same time, at about 7:47 p.m., dispatch for the Milwaukee Police Department was also notified that Steven Kaywood had arrived at the St. Joe's emergency room after being shot in the back at 2452 W. Capitol Drive. Dispatch then communicated this to officers at the scene. Ex. B to Grau Decl.; Ex. T to Grau Decl. at 23:11–26:2.

58. After leaving the store, Officer Seelow laughed as he told another officer, "It's completely empty in there!  There's blood going into the bathroom . . . But no one!" Ex. H to Grau Decl. 00:01:26–00:01:35.

59. After completing his sweep of the store, Officer Dillman informed Officer Sandoval that no one had been located in the store. Ex. Q to Grau Decl. at 28:6–13; Ex. G to Grau Decl. 00:03:14–00:03:22.

60. After Officer Dillman spoke with Officer Sandoval, an officer can be heard over the radio saying that Boney's Foods was opened and that no employees were inside. Ex. G to Grau Decl 00:03:45–00:03:57.

61. A few minutes later, Officer Dillman spoke with Sharral Payne outside of Boney's Foods. Ex. Q to Grau Decl. at 30:12–16; Ex. G to Grau Decl 00:07:28–00:07:51.

9

62. Payne did not provide Officer Dillman with consent to search Boney's Foods. Ex. Q to Grau Decl. at 31:4–8; Ex. G to Grau Decl. 00:07:28–00:07:51.

63. After Officers Seelow and Dillman left the store, an officer stood at the sole entrance to Boney's Foods. Ex. H to Grau Decl. 00:15:23–00:15:27.

64. Once the store was cleared, Officer Sandoval briefly spoke with witnesses outside of Boney's Foods. He then sat in a squad car with a witness for over an hour. Exs. K–M to Grau Decl.

65. After clearing the store, Officer Seelow returned to his vehicle and performed a search on a witness, Toyea Funches.  Ex. H to Grau Decl. at 00:12:40–00:13:05.

**IV. Seelow and Sandoval fail to intervene in an illegal search of Boney's Foods**

66. While Seelow and Sandoval were investigating the scene outside of Boney's Foods, a group of other Milwaukee Police Department Officers, including Officer Macrae, unlawfully entered Boney's Foods and investigated whether the store had a proper tobacco license.  Ex. A to Grau Decl. 00:03:26 – 00:10:14.

67. Officer Mauch entered Boney's Foods at 8:03 pm. Ex.A to Grau Decl. 00:03:26.

68. He left the store at 8:10 pm.  Ex.A to Grau Decl. 00:10:05.

69. During that time, Officer Sandoval was in a squad car in front of Boney's Foods. Ex. M. at 00:01:43–00:08:43.

70. During this timeframe, Officer Seelow sat in his squad car and faced directly toward the entrance of Boney's Foods while the officers entered and

searched. Ex. H to Grau Decl. 00:16:56; Ex. H to Grau Decl. 00:17:50; Ex. A to Grau

Decl. 00:04:23; *compare the time stamps on the following screenshots:*



Ex. H to Grau Decl. 00:16:56.



Ex. A to Grau Decl. 00:03:30.



Ex. H to Grau Decl. 00:17:50.



Ex. A to Grau Decl. 00:04:23.

71. Neither Seelow nor Sandoval intervened in this search of the store. Ex. A to Grau Decl. 00:03:26 – 00:10:14.

## V. Detectives Fitzgerald and Dukic Arrive on Scene

72. Antonio Fitzgerald and Mladen Dukic were detectives with the Milwaukee Police Department on December 8, 2020. Ex. P to Grau Decl. at 6:21–7:3; Ex. D to Grau Decl.

73. Detectives Fitzgerald and Dukic were dispatched to Boney's Foods at about 7:43 p.m. on December 8. They arrived about 15 minutes later. Ex. P to Grau Decl. at 9:12–10:16; Ex. D to Grau Decl. at 1.

74. Upon arrival, Detectives Fitzgerald and Dukic spoke with Sergeant Kitts, who informed him that there had only been one gunshot victim and that the victim had been transported to the hospital. Ex. P to Grau Decl. at 13:17–14:11; Ex. R to Grau Decl. at 11:9–18; Ex. D to Grau Decl. at 1–2.

75. Sergeant Kitts also told them that no one else at the store was injured. Ex. Q to Grau Decl. at 11:24–12:2.

76. Detectives Fitzgerald and Dukic had not yet entered Boney's Foods when they spoke to Sergeant Kitts. Ex. P to Grau Decl. at 16:16–20; Ex. R to Grau Decl. at 11:9-11.

77. After speaking with Sergeant Kitts, Detective Fitzgerald began investigating the scene. Ex. P to Grau Decl. at 16:21–24.

13

78. Detective Fitzgerald then spent approximately one hour marking, measuring, and documenting evidence located outside of Boney's Foods. Ex. P to Grau Decl. at 16:25–19:7.

79. After speaking with Sergeant Kitts, Detective Dukic interviewed Mr. Funches, who was a witness to the shooting, in an unmarked police vehicle outside of Boney's Foods. Ex. R to Grau Decl. at 13:16–23; Ex. C to Grau Decl. at 1–2.

80. Detective Dukic interviewed Mr. Funches for approximately 45 minutes to 1 hour. Ex. R to Grau Decl. at 13:24–14:6.

81. Detective Dukic did not enter Boney's Foods prior to speaking with Mr. Funches. Ex. R to Grau Decl. at 14:7–11.

82. While he remained outside the store, Detective Dukic saw that there were cameras inside and outside Boney's Foods. Ex. R to Grau Decl. at 14:12–17; Ex. C to Grau Decl. at 2.

83. After observing the security cameras, Detective Dukic decided that he wanted to locate the hard drive that the cameras fed into because he believed that it might contain footage of the shooting. Ex. R to Grau Decl. at 14:18–15:1; Ex. C to Grau Decl. at 2.

84. After one hour of investigating outside the store, Detectives Fitzgerald and Dukic entered Boney's Foods. Ex. P to Grau Decl. at 22:3–6; Ex. R to Grau Decl. at 15:2–5.

## VI. Search and Seizure of Kaywood's Jacket and Other Personal Items

85. At the time Detectives Fitzgerald and Dukic entered Boney's Foods, they had not received consent from any of the store's owners to enter or search the store. Ex. P to Grau Decl. at 21:23–22:2; Ex. R to Grau Decl. at 21:17–20.

86. At some point after Detectives Dukic and Fitzgerald arrived, Officer Seelow informed them that he had conducted a sweep of Boney's Foods and that no civilians were located inside the store. Ex. T to Grau Decl. at 39:10–40:11.

87. Detectives Fitzgerald and Dukic did not believe they were acting as community caretakers or providing emergency aid while they were inside Boney's Foods. Ex. P to Grau Decl. at 14:12–19; Ex. R to Grau Decl. at 12:8–16.

88. At no point on December 8, 2020, did Detectives Fitzgerald and Dukic believe that the Milwaukee Police Department had secured or was attempting to secure a warrant to enter and search Boney's Foods. Ex. P to Grau Decl. at 14:25–16:6; Ex. R to Grau Decl. at 12:23–25, 15:24–16:8.

89. Rather, Detective Fitzgerald entered the store in order to collect evidence of the shooting. Ex. P to Grau Decl. at 27:8–24.

90. Detective Dukic says he entered the store because he was worried that evidence would be tampered with and because inside the store was part of the crime scene. Ex. R to Grau Decl., 12:23–13:5, 26:16–22.

91. After entering the store, Detective Fitzgerald saw and picked up Kaywood's jacket. Ex. P to Grau Decl., 20:18–22, 24:1–3.

92. Prior to picking up Kaywood's jacket, Detective Fitzgerald did not observe anything located in the jacket's pockets. Ex. P to Grau Decl. at 23:14–23:18.

93. Detective Fitzgerald had not received consent to search or seize the jacket. Ex. P to Grau Decl. at 24:13–18.

94. Officers Seelow and Sandoval later re-entered the store. When they re-entered the store, they knew the Milwaukee Police Department had not received a warrant to enter the store. Ex. S to Grau Decl. at 20:5–13; Ex. T to Grau Decl. at 37:8–12.

95. When he entered the store, Officer Sandoval was aware that Officers Seelow and Dillman had to kick down the door to Boney's Foods for law enforcement to enter the store and that no one was inside the store. Ex. S to Grau Decl. at 20:14–21:22.

96. At the time Seelow and Sandoval entered the store, they had not received consent to do so. Ex. W to Grau Decl. at ¶21; Ex. V to Grau Decl. at ¶47; Ex. S to Grau Decl. at 31:4–8; Ex. P to Grau Decl. at 24:13–18; Ex. R to Grau Decl. at 21:21–22:9.

97. Instead, they say they entered the store to preserve and recover evidence. Ex. S to Grau Decl. at 22:18–23:6.

98. A detective then handed the jacket to Officer Sandoval while they were inside Boney's Foods. Ex. S to Grau Decl. at 18:4–6; Ex. P to Grau Decl. at 24:1–3.

99. Officer Sandoval observed there was a bullet hole in the jacket but did not observe any contraband inside the jacket at this time. Ex. S to Grau Decl. at 18:13–19:17.

100. Officer Sandoval was then instructed by another member of the Milwaukee Police Department to search the jacket. Ex. S to Grau Decl., 18:18–20.

101. Officer Sandoval then searched the jacket. Ex. S to Grau Decl., 18:13–16.

102. Officer Seelow was with Officer Sandoval when he searched the jacket, but he never stopped him from searching the jacket. Ex. T to Grau Decl. at 36:15–17, 37:18–21.

103. Officer Sandoval found oxycodone pills and marijuana inside of the jacket. Ex. S to Grau Decl. at 35:10–14.

104. He also discovered an ID card, a credit card, a healthcare card, and three keys in Kaywood's jacket. Ex. E to Grau Decl. at 1.

105. After Officer Sandoval searched the jacket, Detective Fitzgerald removed the jacket and the items found in its pockets from the store and placed them into evidence. Ex. P to Grau Decl. at 24:19–22; Ex. D to Grau Decl. at 9.

106. Officer Sandoval continued to search Boney Foods and found a black digital scale about four feet from the jacket. Ex. S to Grau Decl. at 27:15–22; Ex. O, pg. 2.

**VII. Seizure of Kaywood's Surveillance Hard Drive**

107. While inside Boney's Foods, Detective Dukic searched for and found the hard drive box for the surveillance cameras. Ex. R to Grau Decl. at 15: 2–7; Ex. C to Grau Decl. at 2.

108. The hard drive was located on a shelf behind cleaning supplies. Ex. V to Grau Decl. at ¶50.

109. Detective Dukic was not able to find anyone who knew how to operate the camera surveillance system. Ex. C to Grau Decl. at 3.

110. Detective Dukic called Sharral Payne (who had by now left); however, Payne told Dukic she did not know how to operate the camera system. Ex. R to Grau Decl. at 21:3–16; Ex. C to Grau Decl. at 3.

111. At no point in that phone conversation did Payne give Detective Dukic or any other officer permission to be in the store or to collect the hard drive. Ex. R to Grau Decl. at 21:21–22:9.

112. Someone from the Milwaukee Police Department then removed the hard drive from the store. Ex. R to Grau Decl. at 23:4–7.

113. Detective Dukic does not recall if he physically removed the hard drive from Boney's Foods; however, if someone else removed the hard drive, it would have been on his orders. Ex. R to Grau Decl. at 23:8–16.

114. Detective Dukic later placed the security hard drive into inventory. Ex. R to Grau Decl. at 23:4–7.

115. Kaywood personally paid for the security hard drive in Boney's Foods. Ex. V to Grau Decl. at ¶¶6–7.

116. When Detective Dukic removed (or ordered the removal of) the security hard drive from Boney's Foods, he knew that the Milwaukee Police Department

did not have a search warrant authorizing him to enter or search the store or seize anything. Ex. R to Grau Decl., 23:17–23.

117. The Milwaukee Police Department never sought or received a search warrant to enter, search, or seize items from Boney's Foods. Ex. R to Grau Decl. at 15:24–16:8.

118. The Defendants were acting under the color of law at all times relevant to this lawsuit. Ex. N, RTA ¶¶ 1–8.

119. The Milwaukee Police Department understood Sharral Payne to be the owner of Boney's Foods on December 8, 2020. Ex. R to Grau Decl., 20:15–21:11.

120. Detective Fitzgerald's Report indicated that there were at least 18 Milwaukee Police Department Officers at 2452 W. Capitol Dr. on December 8, 2020. Ex. D to Grau Decl, pg. 2–3.

121. Officers from the Milwaukee Police Department spoke with Kaywood in the hospital but never obtained consent to search his store. *See generally*, Ex. I to Grau Decl.

122. The security hard drive did not contain any security footage on it because the cameras were not connected to the hard drive. Ex. U to Grau Decl., 30:21–31:20.

 Dated: October 18, 2024,

> STRANG BRADLEY, LLC
> Attorneys for Plaintiff
>
> /s/ William E. Grau
> William E. Grau
>   Wisconsin Bar No. 1117724
> John H. Bradley
>   Wisconsin Bar No. 1053124

R. Rick Resch
 Wisconsin Bar No. 1117722
STRANG BRADLEY, LLC
613 Williamson St., Ste. 204
Madison, WI 53703
(608) 535-1550
John@StrangBradley.com
Rick@StrangBradley.com
William@StrangBradley.com