UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEVEN KAYWOOD,

    Plaintiff,

                 Case No. 23-cv-1644-bhl

 v.

CITY OF MILWAUKEE, et al,

    Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART, AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    On December 8, 2020, Plaintiff Steven Kaywood was shot outside Boney's Foods, a convenience store that he owned and operated on Capital Drive in Milwaukee. While Kaywood was being treated at a local hospital, Milwaukee Police Department officers arrived at his store and, believing someone might be injured inside, kicked open the door, searched the store, and confirmed no one was there. Roughly an hour later, after officers had secured the premises, multiple officers reentered the store—without securing a warrant—and conducted a further search during which they seized Kaywood's bloody jacket, the pockets of which contained marijuana and oxycodone pills, and other items. In this lawsuit, Kaywood challenges the reentry into his store and the seizure of his property on Fourth Amendment grounds. He sues four individual defendants, Milwaukee Police Officers Nicholas Sandoval and Tyler Seelow and Detectives Antonio Fitzgerald and Mladen Dukic for direct violations of his Fourth Amendment rights. He also claims that Sandoval and Seelow are liable for failing to intervene to stop the other officers from violating the Fourth Amendment.[1]

---

[1] Kaywood also sues the City of Milwaukee but alleges only that it must indemnify the individual defendants pursuant to Wis. Stat. §895.46. (ECF No. 1 ¶10.) Section 895.46 requires municipalities to indemnify officers and employees for any judgments against them while acting within the scope of their employment. §895.46(1)(a). The City of Milwaukee has not argued that the defendant officers were acting outside the scope of their employment or asserted that it is improperly named as a defendant. The Seventh Circuit has allowed municipalities to be named as defendants in suits seeking indemnification under §895.46. *See Martin v. Milwaukee Cnty.*, 904 F.3d 544 (7th Cir. 2018).

The parties have filed cross motions for summary judgment. Defendants maintain that Kaywood's claims fail because the warrantless searches and seizures did not violate the Fourth Amendment as a matter of law. Defendants also invoke qualified immunity. Kaywood argues that the undisputed facts establish that all four Defendants violated his Fourth Amendment rights and none of the violations are excused by qualified immunity. The Court will grant Kaywood's summary judgment motion in part and deny it in part. The record confirms that the warrantless searches and seizures violated Kaywood's Fourth Amendment rights. Moreover, because existing case law clearly established that Defendants needed a warrant to reenter the store, they are not entitled to qualified immunity. Both sides' summary judgment motions will be denied with respect to Kaywood's failure to intervene claims, however, because those claims remain subject to factual disputes.

## BACKGROUND

Plaintiff Kaywood was the co-owner and manager of Boney's Foods, a convenience and grocery store located at 2452 West Capitol Drive, in Milwaukee, Wisconsin. (ECF No. 41 ¶1.) Defendants Sandoval and Seelow are Milwaukee Police Officers. (ECF No. 38 ¶40.) Fitzgerald and Dukic are Milwaukee Police Detectives. (*Id.* ¶72.) On the evening of December 8, 2020, Kaywood and an employee, Shiesha "Brittaney" Robinson, were working at the store. (ECF No. 45 ¶4; ECF No. 38 ¶23.) Shortly before 7:30 p.m., Kaywood stepped outside to speak with someone when an unknown gunman began shooting in their direction. (ECF No. 38 ¶¶30–31; ECF No. 41 ¶¶7–8.) Everyone outside the store scattered, but Kaywood was struck in the back by a bullet and fell to the ground. (ECF No. 38 ¶¶32–33; ECF No. 41 ¶10.) He retreated into the store and headed to the bathroom to examine the wound. (ECF No. 38 ¶33; ECF No. 41 ¶10.) He removed his jacket and left it on the floor, leaving behind a trail of blood. (ECF No. 38 ¶¶33–34; ECF No. 41 ¶¶9–10.) After telling Robinson to call the police, Kaywood arranged for his nephew to drive him to the hospital. (ECF No. 45 ¶5; ECF No. 41 ¶11.) After his departure, Robinson closed and locked the store. (ECF No. 45 ¶7.)

The Milwaukee Police Department's ShotSpotter system alerted officers to the shooting, and Defendants Sandoval and Seelow were soon dispatched to the scene, where they were joined by Officer Mark Dillman. (ECF No. 38 ¶¶40, 43–44.) Seelow noticed gun casings and blood outside the front door and proceeded to kick in the door, after which he and Dillman entered the store to conduct a sweep to search for possible victims. (ECF No. 41 ¶¶14–16.) During this initial

sweep, Seelow and Dillman noticed but did not search or seize Kaywood's black jacket, although they did see blood on it. (ECF No. 38 ¶¶52–53.)

Officers Seelow and Dillman had completed their sweep by about 7:47 p.m. and confirmed that no one was inside the building. (ECF No. 45 ¶¶15–16, 19.) They left the building and reported it "clear." (ECF No. 38 ¶¶50–51, 54–56.) Seelow gave instructions to "lock it up," and an officer stood guard at the store's only entrance. (ECF No. 38 ¶¶56, 63.) From that point on, it is undisputed that the store had been searched and secured, and officers had confirmed that no one was inside. These facts were communicated to the officers on the scene. Dillman specifically told Sandoval that no one was inside the store and a radio announcement confirmed that the store had been searched and no one was inside. (*Id.* ¶¶59–60.) Dispatch officers also reported that Kaywood had arrived at the St. Joseph's Emergency Room. (*Id.* ¶57.)

While an officer stood outside the store's entrance, Seelow and Sandoval continued their investigation. (*Id.* ¶¶63–65.) Sandoval briefly spoke with witnesses and sat with a witness in his squad car, while Seelow searched another witness at his vehicle. (*Id.* ¶¶64–65.) Officer Dillman also investigated, and spoke to Sharral Payne, Kaywood's niece, and a co-owner of Boney's Foods, outside the store; Payne did not provide consent to enter the store. (*Id.* ¶¶12, 61–62.) At the same time, a different group of Milwaukee Police Officers, including Officers Macrae and Mauch, entered the store to see if it had a proper tobacco license. (*Id.* ¶¶66–67.) Neither Seelow nor Sandoval intervened to stop Macrae and Mauch from entering. (*Id.* ¶¶69–71.)

Around 8:00 p.m., Detectives Fitzgerald and Dukic arrived at the store. (*Id.* ¶¶72–73.) They were informed that a single gunshot victim (Kaywood) had been transported to the hospital and no one else had been injured. (*Id.* ¶¶74–75.) After initially investigating outside the store, Dukic noticed a number of cameras both inside and outside the store and decided to try to locate the computer hard drive on which any footage of the events might be stored. (*Id.* ¶¶77–83.) Accordingly, about an hour after arriving, Fitzgerald and Dukic entered the store to collect and preserve potential evidence of the shooting. (*Id.* ¶¶84, 89–90.) Seelow and Sandoval also entered the store, intending to preserve and recover evidence. (*Id.* ¶¶94, 97.)

During these subsequent entries into the store, Fitzgerald picked up Kaywood's jacket and handed it to Sandoval, who observed a bullet hole and later searched it and discovered oxycodone pills and marijuana in the pockets, along with various cards and keys. (*Id.* ¶¶91, 98–99, 103–04.) Fitzgerald placed the jacket and other items into evidence. (*Id.* ¶105.) Sandoval also found and

seized a small black digital scale that was located about four feet from the jacket. (*Id.* ¶106.) For his part, Dukic located a hard drive but could not find anyone who knew how to operate the camera surveillance system. (*Id.* ¶¶107, 109.) He called Payne, who had left the site, to ask how to operate the system; she told him she did not know how. (*Id.* ¶110.) He had the hard drive removed and placed into inventory, although it was ultimately found not to contain any security footage. (*Id.* ¶¶112–114, 122.) The officers did not obtain a warrant or receive Kaywood's, or any other person's, consent for any of these later searches of the store. (*Id.* ¶¶117, 121.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could influence the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. Upon such a showing, the burden shifts to the opposing party to "make a showing sufficient to establish the existence of an element essential to that party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322). This burden is not onerous, but the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

If the parties assert different characterizations of the facts, the Court must view the record in the light most favorable to the non-moving party. *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). "Although we construe all facts and make all reasonable inferences in the nonmoving party's favor, the moving party may succeed by showing an absence of evidence to support the non-moving party's claims." *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quoting *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020)).

## ANALYSIS

The circumstances surrounding the shooting, searches, and seizures at Boney Foods on December 8, 2020 are largely undisputed. The parties agree that Defendants entered the store and seized Kaywood's jacket and its contents, along with a digital scale and a nearby hard drive, without a warrant or consent. (ECF No. 32 at 1; ECF No. 40 at 7.) Defendants concede that Kaywood had a reasonable expectation of privacy—and, thus, Fourth Amendment protection—in the store. (ECF No. 37 at 3.) For his part, Kaywood concedes that Seelow was justified in kicking in the door when he first arrived to ensure no one was injured inside the store. (ECF No. 28 at 5–6.) The parties' views diverge, however, on how the Fourth Amendment applies to Defendants' later decision to reenter the store and the subsequent seizures of Kaywood's property.

Defendants insist the warrantless reentry, searches, and seizure were justified by various exceptions to the Fourth Amendment's warrant requirement. (ECF No. 32 at 7–8, 11–12.) They also claim qualified immunity for any constitutional violations. (*Id.* at 13–14). Kaywood argues that Defendants' actions violated the Fourth Amendment and that Sandoval and Seelow are additionally liable for failing to intervene to stop the other officers' violations. Kaywood also disputes that qualified immunity applies. (ECF No. 40 at 7.)

**I.      Defendants Violated Kaywood's Fourth Amendment Rights When They Re-Entered and Searched His Store and Seized Evidence Without a Warrant.**

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Cons. amend. IV. As a general rule, all searches and seizures of private homes or commercial businesses must be authorized in advance by a valid search warrant supported by probable cause. *See Payton v. New York*, 445 U.S. 573, 576 (1980); *City of Los Angeles v. Patel,* 576 U.S. 409, 419–20 (2015); *see also Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973) ("It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable.'"). Because the "ultimate touchstone" of the Fourth Amendment is

reasonableness, however, courts have recognized exceptions to the warrant requirement. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (citing *Flippo v. West Virginia*, 528 U.S. 11, 13 (1999)); *Thompson v. Louisiana*, 469 U.S. 17, 21 (1984)). For example, exigent circumstances can justify a police officer's reasonable warrantless search if "there is a compelling need for official action and no time to secure a warrant[.]" *Hawkins v. Mitchell*, 756 F.3d 983, 992 (7th Cir. 2014) (quoting *United States v. Venters*, 539 F.3d 801, 807 (7th Cir. 2008)). But the need to search without a warrant must be "genuine" and the circumstances are assessed objectively, based on the officers' conduct "during the entire period" in which they had the opportunity to obtain a warrant. *See Sutterfield v. City of Milwaukee*, 751 F.3d 542, 557 (7th Cir. 2014) (quoting *United States v. Patino*, 830 F.2d 1413, 1416 (7th Cir. 1987)). And any ensuing warrantless search must be "strictly circumscribed by the exigencies which justify its initiation." *Mincey v. Arizona*, 437 U.S. 385, 393 (1978) (quoting *Terry v. Ohio*, 392 U.S. 1, 25–26 (1968)). Because Defendants' second warrantless entry, search, and seizure of items from Kaywood's store fall outside the limited exceptions to the warrant requirement, the record confirms that all four Defendants violated Kaywood's Fourth Amendment rights.

In their depositions, Defendants acknowledged that they re-entered the store for the purpose of collecting evidence in relation to the investigation of a crime. (ECF No. 45 ¶¶46–47, 52–53.) Detective Fitzgerald, for example, cited the "exigency exception" and, when pressed, explained that his primary purpose was to collect evidence and agreed that he was describing a "crime scene exception" to the warrant requirement. (ECF No. 30-16 at 27:9–28:24.) Similarly, the other officers admitted that their bases and reasons for reentering related to the evidence they believed was to be found inside the store. (ECF No. 30-20 at 30:14–31:1; ECF No. 30-18 at 26:16–22; ECF No. 30-19 at 22:6–23:6.)

These acknowledgments are problematic. There is no crime scene exception to the warrant requirement. *Flippo*, 528 U.S. at 13–14. Accordingly, in support of their summary judgment motion, Defendants invoke other exceptions to the warrant requirement. As explained below, well-established caselaw confirms that none of the recognized exceptions to the warrant requirement apply here.

### A. The "Community Caretaking" Doctrine Does Not Apply in this Context.

Defendants now lead with the argument that the searches and seizures were justified by the "community caretaking" exception to the warrant requirement. In *Cady v. Dombrowski*, 413 U.S.

433 (1973), the Supreme Court upheld the validity of a warrantless search of an impounded automobile after an accident that had incapacitated the driver. In analyzing the reasonableness of the warrantless search, the Court recognized that police sometimes engage in "community caretaking functions[] totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* at 441. In these circumstances, police officers can reasonably conduct a warrantless search in furtherance of these functions without violating the Fourth Amendment. *Id.* at 447–48. The Court emphasized that the officers in *Cady* were not acting to investigate a crime, but to respond to a reasonable belief that an unsecured firearm was inside the damaged vehicle and to secure the firearm before the vehicle was stored in an unsecured lot. *Id.* at 436–37, 447–48. Under those circumstances, the Court held the warrantless search was reasonable and compliant with the Fourth Amendment. *Id.* at 447.

The Supreme Court revisited and confirmed the limited application of the community caretaking exception in *Caniglia v. Strom*, 593 U.S. 194, 196–99 (2021). In *Caniglia*, the Court reversed a First Circuit decision applying the community caretaking exception to justify a warrantless search of a home and the seizure of firearms located during that search. *Id.* at 196–97. Officers conducted the search and seizure after removing the homeowner and taking him to a hospital for a psychiatric evaluation. *Id.* The district court and First Circuit held the officers' warrantless search was justified under the community caretaking doctrine. *Id.* at 197. But the Supreme Court reversed, emphasizing that the community caretaking exception does not apply to warrantless entries and searches of a home. *Id.* at 199. Consistent with *Cady*, the Court acknowledged that police officers need to perform civic tasks outside of investigating crimes but emphasized that this need did not provide them "an open-ended license" to perform these tasks anywhere and without a warrant, especially in an individual's home. *Id.* at 197–99.

Under *Cady* and *Caniglia*, the community caretaking exception does not apply. Caselaw confirms that the doctrine is limited to warrantless searches of automobiles and does not justify warrantless searches of homes or businesses. *See Cady*, 413 U.S. at 439–42 (discussing differences in the application of the Fourth Amendment to buildings and automobiles); *Caniglia*, 593 U.S. at 198–99; *Sutterfield*, 751 F.3d at 555 (citing *United States v. Pichany*, 687 F. 2d 205, 207–09 (7th Cir. 1982) (holding the community caretaking doctrine could not support the warrantless search of a warehouse)). The Seventh Circuit expressly confirmed this limitation on

the exception more than a decade ago in *Sutterfield*, 751 F.3d at 555 (citing *Pichany*, 687 F. 2d at 207–09).

Ignoring this federal caselaw, Defendants cite Wisconsin cases that appear to adopt a broader application of the doctrine, at least by name.[2] (ECF No. 32 at 7.) But state courts' interpretations of the Constitution do not trump federal court precedential rulings on federal law, and, here, both the Supreme Court and Seventh Circuit have rejected the broader application that Defendants posit. *See Caniglia*, 593 U.S. at 198–99; *Sutterfield*, 751 F.3d at 554. This Court is bound by the Seventh Circuit's interpretation of constitutional law, not Wisconsin's. *See United States v. Glazer*, 14 F.3d 1213, 1216 (7th Cir. 1994). At best, Defendants' invocation of Wisconsin precedent could bear on qualified immunity, s*ee Sutterfield*, 751 F.3d at 559, but for reasons discussed below, the Court concludes that Defendants' invocation of state law fails in that context too.

### B. The "Emergency Aid" Exception to the Warrant Requirement Also Does Not Apply in This Context.

Although Defendants do not invoke this doctrine by name, the more plausibly applicable exception to the warrant requirement is the "emergency aid" exception. The Supreme Court has recognized that police officers can reasonably enter a home or other protected place without a warrant where exigent circumstances make it necessary to do so "to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *See Brigham City*, 547 U.S. at 403. This exception also has its limitations. To apply, officers must have an objectively reasonable basis for believing that someone inside needs emergency assistance. *Id.* at 403–04.

Defendants emphasize that they needed to confirm that no one was injured inside Boney's Foods, given that a shooting had just occurred there. (ECF No. 32 at 7–8.) Defendants' initial entry and sweep of the store are clearly justified by the emergency aid exception. Indeed, Kaywood concedes that both Officer Seelow and Officer Dillman properly entered and searched the store based on their reasonable belief that someone might be injured inside. (ECF No. 28 at 16.) But the initial entry and sweep are not at issue. Kaywood's legal claims challenge Defendants' later entries into the store and seizures of his property. He argues that any lawful

---

[2] Prior to *Caniglia*, the Wisconsin Supreme Court applied what it called the community caretaking doctrine to officers' entries into protected buildings. *See State v. Wiskowski*, 7 N.W.3d 474, 480 n.6 (Wis. 2024) (declining to modify Wisconsin's community caretaking standard in deciding a case that did not present the issue because it involved an automobile). Wisconsin courts do not appear to have addressed or clarified their application of the doctrine since the *Caniglia*.

justification for entry and search necessarily ended when the officers realized the store was empty and left, at which point the Fourth Amendment required Defendants to obtain a warrant before any reentry or later search. (*Id.*)

Defendants evade Kaywood's actual claims and argument. They conflate the initial entry and search of the store with the Defendants' *later* warrantless entries and searches. (ECF No. 32 at 7–8.) And they do not explain why the emergency justifying their initial need to search the store continued through the later searches and seizures. The undisputed facts make clear there was no longer an emergency at the time Defendants subsequent entries into Boney's Foods. By that time, multiple MPD officers had already secured the scene and posted an officer at the only entrance to the store. (ECF No. 38 ¶63.) Officers had confirmed there was no one inside who needed emergency aid, and an hour long investigation of the crime scene was already underway. (ECF No. 45 ¶¶24–25, 28–29, 37, 39, 40–41, 43, 50.) Accordingly, at the time of the challenged conduct, any exigency had been eliminated. Defendants had no reason to act immediately and no justification for failing to obtain a warrant before reentering the store to collect evidence.

The Supreme Court has repeatedly held that any warrantless search must be "strictly circumscribed by the exigencies which justify its initiation." *Mincey*, 437 U.S. at 393 (quoting *Terry*, 392 U.S. at 25–26); *Thompson*, 469 U.S. at 21; *Flippo*, 528 U.S. at 11–12. In *Mincey*, the Supreme Court held that while police officers were justified in entering and searching an apartment to identify and assist wounded individuals and officers following a shooting, the fact that the premises was a crime scene did not justify later warrantless searches and seizures, after the premises had been secured and the original exigency had ended. 437 U.S. at 393. Once the exigency ended—after the wounded persons had been discovered, and aid rendered—the police no longer had any exception to the warrant requirement to justify their continued presence. *Id*. Similarly in *Thompson*, 469 U.S. at 18–21, the Court invalidated a less extensive warrantless search of a home that occurred roughly thirty minutes after an initial warrantless entry justified by the emergency aid doctrine. The Court explained that although the deputies *would* have been justified in seizing evidence in plain view without a warrant during their initial search for a wounded person, the evidence in this case had not been seized during an initial "victim-or suspect" search, and the Fourth Amendment required the officers to obtain a warrant before reentering the premises to conduct a later search after the initial search was completed. *Id.* at 22–23. Finally, in *Flippo*, 528 U.S. at 11–12, the Supreme Court again rejected a general "crime scene exception"

within the exigency exception, holding that officers violated the Fourth Amendment by reentering a vacation cabin and seizing evidence after an exigency occasioned by an initial 911 call had been resolved and the premises secured.

Defendants' attempts to distinguish this caselaw are unavailing. They first argue that the timing of the searches at issue are different. (ECF No. 37 at 8.) It is true that *Mincey* involved a protracted four-day search, but the timeline in *Thompson* is similar to the one at issue here. Moreover, as the Supreme Court has made clear, the need to obtain a warrant does not turn on the length of a search or the date on which it occurs. *Thompson*, 469 U.S. at 21. The dispositive issue is whether the exigency that justified immediate action, including a warrantless entry and search, has ended. *See Mincey*, 437 U.S. at 393; *Sutterfield*, 751 F.3d at 559–60 (citing *Patino*, 830 F.3d at 1416–17.) Once that occurs and officers have time to secure a warrant, they must do so. *See Mincey*, 437 U.S. at 393; *Sutterfield*, 751 F.3d at 559–60 (citing *Patino*, 830 F.3d at 1416–17.)

Defendants also contend that *Mincey* and *Thompson* do not control because both cases involved general searches, while Defendants here seized only evidence "that was discovered in plain view when Officer Seelow and Officer Dillman *initially* entered the store." (ECF No. 37 at 6, 8.) (emphasis added.) The plain view doctrine cannot justify the searches and seizures made here. While an officer can lawfully seize evidence in plain view during a warrantless search conducted while exigent circumstances *still* exist, having previously seen an item in plain view does not justify a later warrantless reentry and seizure after the exigency has expired. *Thompson*, 469 U.S. at 22. Under Defendants' theory, a police officer could reasonably enter a home to provide emergency aid on one day and then return at any time to retrieve evidence he noticed during the initial valid search without bothering to obtain a warrant. That is not how the plain view doctrine works, and it is not what the Constitution requires, as both *Thompson* and *Mincey* make clear.

Defendants also try to excuse their failure to obtain a warrant by calling the warrant requirement "impractical." (ECF No. 44 at 8.) Having seen evidence in plain view during their initial search, they complain that officers might lose valuable evidence if they could not reenter later, at a more convenient time, to seize that evidence. (*Id.* at 8–9.) Defendants cite no authority for this "impracticality" exception to the warrant requirement, and their position has been squarely foreclosed by *Mincey, Thompson*, and *Flippo* for decades. The touchstone of the Fourth Amendment's protection is reasonableness, not practicality or convenience. *See Mincey*, 437 U.S.

at 393 ("The investigation of crime would always be simplified if warrants were unnecessary.") Once the scene at Boney's Foods was secure and any exigency ended, the officers had the ability to obtain a warrant before reentering and searching the property, and the Fourth Amendment required them to do so.

### C. Defendants' Professed Concern for the Potential Destruction of Evidence Does Not Excuse Their Warrantless Searches and Seizures.

Defendants also argue that another of the exigent circumstances exceptions to the warrant requirement—the imminent destruction of evidence—justified their reentry into the store. (ECF No. 32 at 11–12.) This exception recognizes that officers may enter a protected space without a warrant when they reasonably fear that evidence might be destroyed before a warrant could be secured. *United States v. Rivera*, 825 F.2d 152, 156–57 (7th Cir. 1987), *cert. denied*, 484 U.S. 979 (1987); *Kentucky v. King*, 563 U.S. 452, 462 (2011). It is often applied in narcotics investigations, where officers fear drugs will be rapidly disposed of if suspects are alerted to their presence, or while officers call to obtain a warrant. *King*, 563 U.S. at 461–62. For a warrantless search conducted under this exception to be valid, there must be specific facts indicating that evidence is likely to be destroyed before a valid search warrant can be obtained. *Jacobs v. City of Chicago*, 215 F.3d 758, 770 (7th Cir. 2000) (citing *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997)); *United States v. Etchin*, 614 F.3d 726, 733–34 (7th Cir. 2010) (describing exemplary facts that could support a reasonable belief that evidence will be imminently destroyed, like doors being slammed, people running, people telling obvious lies to police at the door). As with other exigency-related exceptions, once the premises to be searched is secured, the threat of destruction of evidence is eliminated, and the exigency no longer exists, any subsequent search or seizure must itself be justified by a warrant or another valid exception to the warrant requirement. *Jacobs*, 215 F.3d at 770. Moreover, exigency is assessed objectively; a police officer's subjective belief that exigent circumstances existed cannot justify a warrantless search without objective support. *Bogan v. City of Chicago*, 644 F.3d 563, 571 (7th Cir. 2011) (citing *United States v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000)).

Defendants offer no facts plausibly suggesting a legitimate fear that any evidence in Boney's Foods was in danger of being destroyed when they proceeded to reenter and search the premises without a warrant. (*See* ECF No. 32 at 11–12; *see also* ECF No. 44 at 11.) Indeed, the undisputed facts show that Defendants did not have any objective basis to believe evidence might

be imminently destroyed. The record confirms that Boney's Foods was locked and already not open to the public when the first officers arrived. (ECF No. 45 ¶7.) Officers then conducted an initial sweep, confirmed no one was inside the building, and secured it. (*Id.* ¶¶15–16, 24–25.) Moreover, at least eighteen officers responded to the shooting that night and one officer was standing at the only entrance. (*Id.* ¶¶28, 64.) In these circumstances no officer could reasonably fear the imminent destruction of evidence. *See Jacobs*, 215 F.3d at 770; *see also Flippo*, 528 U.S. at 14 n.2; *Mincey*, 437 U.S. at 394 (noting guard at crime scene minimized possibility that evidence could be lost or destroyed while a warrant was secured). Defendants' assertions that Boney's Foods was a storefront otherwise open to the public and that someone other than Kaywood had a key, (ECF No. 32 at 11–12), do not alter the situation or excuse officers from obtaining a warrant.[3]

Defendants cite just one case to support their destruction of evidence argument: *Hawkins v. Mitchell*, 756 F.3d 983, 992 (7th Cir. 2014). (ECF No. 32 at 11.) But *Hawkins* did not involve a warrantless entry justified by the belief that evidence was being destroyed. In that case, officers entered a plaintiff's home without a warrant to prevent imminent serious injury and to question him. *Id.* at 993. And the Court of Appeals found their entry *unreasonable* because it was not supported by exigent circumstances. *Id.* at 993–94. This case in no way supports Defendants' position.

Defendants also assert that the store co-owner's refusal to consent to officers' accessing the store's surveillance system indicated she might destroy or tamper with any footage that might exist. (ECF No. 32 at 12; ECF No. 41 ¶¶32–33.) Given that the store was secured by multiple police officers, it is hard to imagine how the co-owner could have secretly accessed the building to destroy evidence. Defendants have identified no specific circumstances that would lead a reasonable officer to believe this scenario posed an *imminent* risk, compelling officers to act immediately without securing a warrant. *See Etchin*, 614 F.3d at 733–34. They also cite no caselaw in which similar facts—an empty building, multiple officers at a secure scene, enough

---

[3] Compounding the oddity of Defendants' argument, they concede in their reply brief that no officer at the scene knew of any other individuals with keys. (ECF No. 44 at 11.) They then assert that the timing does not matter. (*Id.* ("While not known while on the scene, the belief that other individuals would have access to Boney's Foods was confirmed when Plaintiff testified that at least one other individual, Toni Macklin, had keys to the store.").) But what is relevant to determining whether a fear of the imminent destruction of evidence was reasonable are the actual objective facts observable by the officers *at the time*, not a fact that comes out in discovery years later, or a free-floating subjective suspicion of an officer at the scene. *See Rivera*, 825 F.2d at 156 ("[T]he appropriate inquiry is whether the facts, *as they appeared at the moment of entry*, would lead a reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured." (emphasis added)); *see also Bogan*, 644 F.3d at 571.

time to call another person to attempt to obtain consent, and that person, not at the location, refusing to consent to a search—supported a warrantless entry on the basis that evidence was at risk of imminent destruction. Based on the undisputed material facts, there was no objectively reasonable basis for the Defendants to fear the imminent destruction of evidence before they could obtain a warrant, and therefore their warrantless reentry was unreasonable and violated the Fourth Amendment.

## II. Defendants Are Not Entitled to Qualified Immunity.

Defendants alternatively argue that even if they violated Kaywood's Fourth Amendment rights, they are entitled to summary judgment on qualified immunity grounds. (ECF No. 32 at 13–15.) "[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "What is important, in the final analysis, is 'whether the legal norms governing [the government official's] behavior were clearly established at the time of the challenged actions.'" *Upton v. Thompson*, 930 F.2d 1209, 1212 (7th Cir. 1991) (alteration in original) (quoting *Wrigley v. Greanias*, 842 F.2d 955, 958 (7th Cir. 1988)). "[R]easonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (*per curiam*)).

The question of whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (overruled in part on other grounds). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. This only occurs where existing precedent has "'placed the statutory or constitutional question beyond debate.'" *Kisela,* 584 U.S. at 104 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). Reasonable mistakes as to what the law requires or allows are protected by qualified immunity; in assessing the reasonableness of a mistake, courts must consider the facts knowable to the defendants at the time. *Kingsley v. Hendrickson*, 576 U.S. 389, 399 (2015). Effectively, qualified immunity offers protection to all defendants except "the plainly incompetent or those who knowingly violate the law." *White*, 580 U.S. at 79 (citations omitted).

Defendants' qualified immunity arguments are largely undeveloped. In their briefing, they invoke qualified immunity, recite the generally applicable principles, and then proclaim that Kaywood has failed to show a constitutional violation. (ECF No. 32 at 13–15.) Conclusory assertions like these are unhelpful.

Ironically, Defendants' best qualified immunity argument is one they do not expressly make. In seeking to justify their warrantless search, Defendants argue that they "were abiding by the Wisconsin standard," of the community caretaking doctrine. (*Id.* at 7.) The Seventh Circuit has explained that state Fourth Amendment caselaw can be relevant to the qualified immunity analysis in determining what a defendant "might have thought the law, including the federal constitution, permitted." *See Sutterfield*, 751 F.3d at 573. Although Defendants do not raise this issue in connection with their qualified immunity defense, the Court will address whether their purported reliance on state law protects them from liability here. As explained below, Defendants' alleged reliance on state law does not shield them with immunity for at least two reasons.

First, Defendants' actions plainly violated well established federal Fourth Amendment law. The general rule that officers must obtain a warrant supported by probable cause before entering a home or business closed to the public is well established. *Payton*, 445 U.S. at 586; *Boyd v. United States*, 116 U.S. 616, 630 (1886); *Patel,* 576 U.S. at 419–20; *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312 (1978); *Camara v. Municipal Ct.*, 387 U.S. 523, 528–29 (1967); *See v. City of Seattle*, 387 U.S. 541, 543 (1967) ("The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property."). And while the Supreme Court has recognized limited exceptions to this rule, the limitations to those exceptions were also clearly established well before the challenged searches and seizures here. As explained above, the Supreme Court recognized a limited exception to the warrant requirement for officers conducting community caretaking functions involving automobiles in *Cady* in 1973. 413 U.S. at 447–48. The Seventh Circuit confirmed that the community caretaking doctrine could not justify entering a home in *Sutterfield* in 2012. 751 F.3d at 554, 561. Moreover, in reaching that conclusion, the Seventh Circuit relied upon *Pichany*, an earlier Seventh Circuit case from 1982, that established the community caretaking doctrine could not justify entering a building. *Pichany*, 687 F.2d at 208–09. The warrantless searches and seizures at issue here occurred in 2020. The law was thus clearly established that the community

caretaking exception did not apply in the Seventh Circuit, and no officer could have reasonably believed otherwise. *See Sutterfield*, 751 F.3d at 561; *see also Pichany*, 687 F.2d at 207–09.

Second, even under Wisconsin caselaw, Defendants' warrantless actions were clearly unconstitutional. While Wisconsin courts have upheld warrantless search of buildings in exigent circumstances using the "community caretaker" label, the situations in which the state courts have used the term are not similar to the reentries and searches at issue here. Defendants do not cite any Wisconsin cases applying the exception to an entry into a building; they only cite state cases involving searches and seizures of automobiles, *State v. Wiskowski*, 7 N.W.3d 474, 479–80 (Wis. 2024) and *State v. Kramer*, 759 N.W.2d 598, 601–02 (Wis. 2009). (ECF No. 44 at 3; ECF No. 37 at 4). The Court acknowledges that Wisconsin courts have sometimes held that a home entry can be justified on "community caretaker" grounds when there is someone inside whom officers believe needs psychiatric or medical assistance, a situation that does not necessarily lend itself to seeking a typical search or arrest warrant. *See State v. Horngren*, 617 N.W.2d 508 (Wis. Ct. App. 2000) (applying community caretaking exception to warrantless entry into home of individual who had reportedly threatened suicide). As discussed in this caselaw, Wisconsin courts require that the warrantless search or seizure be in connection with officers' conduct of a bona fide community caretaker activity done for the objective purpose of helping the public and unrelated to investigating crime or acquiring evidence. *Id.* at 511; *see also State v. Kramer*, 759 N.W.2d 598, 605 (Wis. 2009) (citing *State v. Anderson*, 417 N.W.2d 411, 414 (Wis. Ct. App. 1987)). If the circumstances confirm that the officers were engaged in a bona fide community caretaker function, Wisconsin courts then balance the intrusion upon the individual's privacy against the public interest in the search or seizure. *Kramer*, 759 N.W. 2d at 605.

Defendants could not have reasonably relied on this "Wisconsin standard" here. It is undisputed that the reentry and searches challenged here were conducted for the purpose of investigating a crime scene and to acquire evidence. After the initial entry and sweep were completed, and the premises of Boney's Foods secured, Defendants knew there was no one in need of any help inside the store. As a matter of law, there was no bona fide community caretaker function to perform at that point. Moreover, Defendants admit that they reentered the store specifically to investigate the crime scene and acquire evidence. Their conduct thus falls outside Wisconsin courts' more expansive application of the community caretaker doctrine.

Defendants also attempt to distinguish *Mincey* and *Thompson* based on the scope of the searches involved and argue that this shows they did not violate clearly established law. (ECF No. 44 at 14–15.) But, as explained above, caselaw on the limited scope of the exigency exception to the warrant requirement was clearly established by the time of Defendants' reentry into Boney's Food and their search and seizure of Kaywood's property. The Fourth Amendment requires a warrant or exception to the warrant requirement to enter a home or business that is not open to the public. *Brigham City*, 547 U.S. at 403 (citing *Groh*, 540 U.S. at 559); *Thompson*, 469 U.S. at 20–21. And it has long been established that warrantless entries under the exigency exception are limited by the exigencies that allow them; when the exigency is known to no longer exist, the justification for the officers' continued presence, or later entries, also no longer exists. *Mincey*, 437 U.S. at 393 (quoting *Terry*, 392 U.S. at 25–26). As stated above, *Thompson*'s facts are materially similar to the facts of this case. *See* 469 U.S. at 18–19.

Defendants' claimed need to preserve evidence likewise fails to supply them with qualified immunity. As discussed above, there was also no reason for any reasonable officer to believe evidence was at imminent risk of destruction, and thus no reason to think this exception to the warrant requirement could apply to these facts. The scene had already been secured, multiple officers were on site, there were no known facts to support a belief that evidence was at risk of imminent destruction, and the officers had enough time to both identify and call the co-owner to seek consent. The law limiting the "imminent destruction of evidence" exception to the warrant requirement was also well-established years before Defendants' conduct here. *See Rivera*, 825 F.2d at 156–57; *Sutterfield*, 751 F.3d at 559–60; *Flippo*, 528 U.S. at 14 n.2.

### III. Neither Party is Entitled to Summary Judgment on Kaywood's Failure to Intervene Claims Against Seelow and Sandoval.

Kaywood also claims that Seelow and Sandoval are liable for failing to intervene to prevent one another, Dukic, and Fitzgerald from violating his Fourth Amendment rights. (ECF No. 1 ¶¶51, 60; *see also* ECF No. 28 at 19–20, 22–23.)[4] While Kaywood has established Officers Seelow's

---

[4] Kaywood's briefing asserts Seelow and Sandoval also failed to intervene to stop still other officers, including Officer Macrae, from violating his Fourth Amendment rights. (ECF No. 28 at 19–20; ECF No. 38 ¶¶66–71.) This is a new claim with a factual basis not pleaded in the complaint and the Court declines the implicit invitation to amend the complaint at this late date. *See Schmees v. HCI.COM, Inc.*, 77 F.4th 483, 488–89 (7th Cir. 2023). Untimeliness aside, the Court also questions whether adding this new theory accomplishes anything material beyond complicating the issues presented.

and Sandoval's direct liability for their Fourth Amendment violations, his failure to intervene claims raise different questions which are best reserved for a jury to decide.

"An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under §1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (emphasis omitted). "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (emphasis omitted) (quoting *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 478 (7th Cir. 1997)).

The Court cannot grant summary judgment to either party on the failure to intervene claims. The factual record is not sufficiently clear to allow the Court to adjudicate at summary judgment whether either Sandoval or Seelow had sufficient time and the realistic ability to intervene to prevent any of the other officers' actions. *See Lanigan*, 110 F.3d at 478. Nor is the record clear on whether Sandoval and Seelow knew that Detectives Dukic and Fitzgerald were violating Kaywood's rights by entering his store. While Sandoval and Seelow certainly knew what *they* had done, and what communications they had been part of since arriving at the scene, the record does not establish whether they knew what the other officers, who were performing different tasks, away from them, had done. (ECF No. 45 ¶¶28–46.) These questions are best reserved for a jury to decide. *See Abdullahi*, 423 F.3d at 774.

## CONCLUSION

The undisputed facts establish that Defendants violated Kaywood's Fourth Amendment rights when they reentered Boney's Foods without justification and seized his property. Because those violations are clearly established by Fourth Amendment precedent, Kaywood is entitled to summary judgment on his direct Fourth Amendment claims, with damages to be determined at trial. Kaywood is not entitled to summary judgment on his failure to intervene claims; those claims present questions of fact that should be decided by a jury.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for partial summary judgment, ECF No. 27, is **GRANTED** as to his direct Fourth Amendment claims, and **DENIED** as to his failure to intervene claims.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment, ECF No. 31, is **DENIED**.

Dated at Milwaukee, Wisconsin on February 20, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge